Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 8815 | **DATE** | 12/14/2004 |
| **CASE TITLE** | IFC Credit Corp. vs. B. Braun Medical, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. IFC has dodged the Rule 12(b)(6) bullet, so that Braun's motion to dismiss SAC Count IV is denied. (37-1) Braun is ordered to answer that count on or before December 28, 2004.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | DEC 15 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 47 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 12/14/2004 | |
| | | | date mailed notice | |
| SN | courtroom deputy's initials | | SN | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IFC CREDIT CORPORATION,           )
                                  )
            Plaintiff,            )
                                  )
      v.                          )   No. 03 C 8815
                                  )
B. BRAUN MEDICAL, INC.,           )
                                  )
            Defendant.            )

MEMORANDUM OPINION AND ORDER

After two false starts, IFC Credit Corporation ("IFC") has filed a Second Amended Complaint ("SAC") against B. Braun Medical, Inc. ("Braun"), and Braun has responded with a Fed. R. Civ. P. ("Rule") 12(b)(6) motion challenging the legal sufficiency of three SAC counts. This Court has upheld Counts II (in its September 1, 2004 memorandum order) and III (by its earlier oral ruling) in Rule 12(b)(6) terms, but it has called for further briefing on the remaining count (SAC Count IV). All the parties' memoranda having now been filed, this memorandum opinion and order addresses the question whether Count IV states a sustainable legal claim.

It is conventional wisdom that for Rule 12(b)(6) purposes the plaintiff's allegations must be accepted as true, coupled with reasonable inferences (Bressner v. Ambroziak, 379 F.3d 478, 480 (7th Cir. 2004), with dismissal being warranted only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" (Hishon v.

King & Spalding, 467 U.S. 69, 73 (1984)). While Count IV, which seeks relief under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 to 505/12 ("Act"), is problematic in some respects, it manages to survive under those generous standards. Accordingly Braun's dismissal motion is denied.

IFC first argues that its claim is viable under the Act because the "defendant was a seller of leases and Spectrum [IFC's predecessor in interest] was the buyer who consumed this product" (IFC Mem. 7). According to IFC, the fact that the claim involves a business that is a consumer of another business' goods suffices to bring it within the ambit of the Act without any further showing that consumer protection concerns are implicated.

But that argument flies in the face of previous pronouncements by this Court (see, e.g., Scarsdale Builders, Inc. v. Ryland Group, Inc., 911 F.Supp. 337, 340 (N.D. Ill. 1996)) and--more importantly--by our Court of Appeals (Athey Prods. Corp. v. Harris Bank Roselle, 89 F.3d 430, 436-37 (7th Cir. 1996)) that a showing of "consumer nexus" is required to state a claim under the Act.[1] Only three years ago plaintiffs in DRL

---

[1] IFC's argument to the contrary really seems disingenuous. It relies almost exclusively on Judge Grady's opinion in Tibor Mach. Prods., Inc. v. Freudenberg-Nok Gen. P'ship, 942 F.Supp. 1165, 1172-73 (N.D. Ill. 1996), while it cites Scarsdale Builders as "Contra." But to begin with, the Tibor holding disavowing the need for a "common nexus" is inconsistent with the later Court of Appeals decision in Athey Prods., 89 F.3d at 436-37. And Judge Grady himself promptly acknowledged that inconsistency post-Athey

2

Enters., Inc. v. ePartners, Inc., 173 F.Supp.2d 818, 819-20 (N.D. Ill. 2001) advanced the same contention that IFC now proffers and were rebuffed by this Court. Nor has the argument gained strength with the mere passage of time.[2] For its claim to survive, then, IFC must satisfy the Act's consumer nexus requirement.

To plead consumer nexus successfully, a plaintiff must allege "conduct [that] involves trade practices directed to the market generally or otherwise implicates consumer protection concerns" (DRL Enters., 173 F.Supp.3d at 820).[3] Because Braun's actions were not directed to the market generally, IFC must look to the alternative that Braun's conduct "implicates consumer

---

in Petri v. Gatlin, 997 F.Supp. 956, 967 & n.8 (N.D. Ill. 1997). This Court will not try to guess at the reason for the inaccurate portrayal of the caselaw by IFC's counsel. In either event, the end result is an entirely unconvincing argument.

[2] Both Athey Prods. and DRL of course exemplified the predictive process required of federal courts in diversity cases when an issue of state law has not been clearly enunciated by a state's highest court. If then the Illinois Supreme Court had issued a clarifying decision in the intervening years since DRL, it would be inaccurate to characterize those years as "mere passage of time." But no such decision has been issued, so the conclusions reached in those earlier federal decisions continue to apply with equal force.

[3] To that end IFC attempts to recast itself as a consumer of Braun's product, so that it can satisfy the consumer nexus requirement, simply by showing personal injury as was present in Skyline Int'l Dev. v. Citibank, F.S.B., 302 Ill.App.3d 79, 85, 706 N.E.2d 942, 946 (1st Dist. 1998). But that argument is unavailing because it is fundamentally inconsistent with the contractual provisions on which IFC relies to establish its claims under Count I (see Scarsdale Builders, 911 F.Supp. at 340 n.8).

3

protection concerns." In that respect this is the only relevant language in Count IV (SAC §103):

> Defendant's acts and practices described herein have interfered with and adversely affected the interests of the hospital consumers by placing them in the position of defending claims and/or suits brought by IFC to rightfully enforce leases, the terms of which, had been altered or modified by Defendant and misrepresented to IFC when Defendant sold the leases to IFC. Defendant's acts and practices have further adversely affected the interests of the hospital consumers by potentially depriving them of the benefits of what they understood their agreements to be with Defendant.

In an effort to support its contention that the quoted language does "implicate consumer protection concerns," IFC seeks to rely on Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc., 190 Ill.App.3d 524, 546 N.E.2d 33 (2d Dist. 1989), which recognized a claim under the Act in a suit between two businesses. But Downers Grove does not provide the degree of support that IFC would like, because the outcome in that case hinged on the existence of a _direct_ impact on consumers arising out of the actions that were the subject of the lawsuit: the publication and distribution of consumer flyers containing false information. In cases between businesses where such direct impact has been lacking, Illinois courts have been hesitant to apply the Act. So for example, Lake County Grading Co. v. Advance Mech. Contractors, Inc., 275 Ill.App.3d 452, 459, 654 N.E.2d 1109, 1116 (2d Dist. 1995) rejected a claim under the Act because the court found "no inherent consumer interest implicated in a construction contract between a general contractor and a

4

subcontractor."[4] Read together, Downers Grove and Lake County Grading confirm that a business plaintiff must allege facts that demonstrate a direct or inherent impact on consumers to "implicate consumer protection concerns."

Given the limited construction afforded the Act by Illinois courts, the first part of IFC's alleged consumer impact--that hospitals will be placed "in the position of defending claims and/or suits brought by IFC to rightfully enforce leases"--just does not do the job. At most that allegation reflects a speculative collateral impact on hospitals, stemming from the possibility that IFC itself might choose to file claims against hospitals to enforce what it understands to be its rights under the agreements that are the subject of SAC Count I. But the actuality or potentiality of collateral consumer costs obviously flows from nearly every contractual breach, so IFC's position on

---

[4] Lake County Grading (id.)(citations omitted) enunciated the concern animating its conclusion:

> Indeed, if litigants could invoke the Act merely by alleging an intentional or fraudulent breach of a contract, common-law breach of contract actions would be supplemented in every case with an additional and redundant remedy under the Act. This could not have been the legislature's intent.

Requiring a direct impact on consumers is thus viewed as a way to ensure that the Act does not supplant the common law of contracts. And although this Court has previously noted that there is arguably a type of judicial legislation involved in that reading (Scarsdale Builders, 911 F.Supp. at 341), it nevertheless provides the best available indication of how Illinois courts would apply the Act to a case such as this one.

5

that score would impermissibly open the door for almost every breach of contract claim to be recast as an "additional and redundant" claim under the Act.

What has been said until now seem to point toward dismissal. But IFC has one last arrow in its quiver, and that one hits the mark. It will be recalled that SAC ¶103 also asserts that Braun's actions impact various hospitals ("consumers" for present purposes) by "potentially depriving them of the benefits of what they understood their agreements to be with Defendant." And that assertion is fleshed out by other allegations in the SAC, especially those set out in Count III. There IFC alleges (1) that Braun made misrepresentations to IFC and to various hospitals both before and after the execution of the agreements at issue and (2) that those misrepresentations led to conflicting understandings by IFC and the hospitals as to their interests and obligations under certain leases.

One example of that portrayal is found in IFC's allegations about Braun's dealings with Minnie Boswell Hospital ("Hospital"). IFC says that Braun entered into a lease agreement with the Hospital for infusion pumps that was paired with a side agreement for a $1 per pump buyout at the end of the term (SAC ¶ 71). But Braun assertedly misrepresented the lease as a standard one in its later negotiations with IFC (SAC ¶72), so that IFC believed it (and not the Hospital) acquired the reversionary interest in the pumps on the lease's expiration (SAC ¶¶72-73). Ultimately

6

IFC and the hospital agreed to a settlement to resolve their competing claims to the equipment, but neither received the full benefit of its expectation (SAC ¶75).

Essentially what IFC contends in the second sentence of SAC ¶103 is that such asserted misrepresentations--in addition to being allegedly fraudulent (SAC Count III) and violative of the representations and warranties contained in its agreement with Braun (SAC Count I)--have the immediate effect of impinging on the interests of other consumers in the marketplace. At the pleading stage, that is enough to constitute a direct impact as required by the Illinois cases already discussed.[5]

## Conclusion

IFC has dodged the Rule 12(b)(6) bullet, so that Braun's motion to dismiss SAC Count IV is denied. Braun is ordered to answer that count on or before December 28, 2004.

                                                      */s/ Milton I. Shadur*
                                        Milton I. Shadur
                                        Senior United States District Judge

Date: December 14, 2004

---

[5] To be sure, one obvious difference between this case and Downers Grove is the existence of a contractual relationship (something that was absent in Downers Grove) between the two parties here. But when Downers Grove has held that a competitor alleging tortious interference has standing to sue under the Act based on direct harm to consumers stemming from that interference, there is no principled reason why a plaintiff claiming a breach of contract should not also have standing to sue under the Act based on direct harm to consumers stemming from that breach.